## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NWR Construction & Exteriors, Inc. | ) | Case No. 23-13173 |
| | ) | |
| Debtor. | ) | Hon. Timothy A Barnes |

### PLAN OF REORGANIZATION DATED JANUARY 2, 2023
### FILED BY NWR CONSTRUCTION & EXTERIORS, INC.

  This Plan of Reorganization (the "Plan") under Chapter 11 of the Title 11 of the United States Code ("Bankruptcy Code") proposes to pay creditors of NWR Construction & Exteriors, INC. (the "Debtor") from future revenues generated by the Debtor's business.  The Debtor is a Sub Chapter V Small Business Debtor, and this Plan is governed by Sub Chapter V of Chapter 11 of the U.S. Bankruptcy Code.

  Generally, the Plan provides that all administrative creditors will be paid in full on the Effective Date of the Plan (which is 30 days after the Order confirming the Plan is a final Order) unless otherwise agreed.  Priority creditors will receive 100% of their allowed claims over the period of the Plan term (5 years) ("Plan Term").  Unsecured Creditors will receive a pro rata share of the Unsecured Creditor Payment (defined below) over a period of 5 years, which shall equal approximately 6.52% distribution on their claims.  Claims of insiders, if any, will be subordinated and will not receive a distribution unless all other classes of creditors receive payment in full. Equity security holders will not receive a distribution.

  All creditors and equity security holders should review this Plan in its entirety.  **Your rights may be affected. You should read these papers carefully and discuss with your attorney.  A Ballot Form is attached hereto as Exhibit A.**

  **Exhibits to this Plan include:**

  A.  Ballot
  B.  Liquidation Analysis
  C.  Projections
  D.  Summary of Monthly Operating Reports
  E.  List of Assumed Contracts
  F.  Secured Creditor Summary and Proposed Payments

# ARTICLE I
## *Classification of Claims and Interests*

1.01   Class 1         Secured Claim of JP Morgan Chase Bank

1.02   Class 2         General Unsecured Claims: Allowed claims of creditors which are unsecured.

1.03   Class 3         Insider Claims: Allowed claims of insiders.

1.04   Class 4         Equity Interests in the Debtor.

# ARTICLE II
## *Treatment of Administrative Expense Claims*
## *Priority Tax Claims and U.S. Trustee Fees*

2.01   <u>Unclassified Claims</u>.  Under §1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes.

2.02   <u>Administrative Expense Claims</u>.

   a. *Professional Fees*.  Each holder of an administrative expense claim allowed under §503 of the Bankruptcy Code will be paid in full on the Effective Date of this Plan (as defined in Section 7.01), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  For fees approved after the Effective Date and before entry of a final decree, payment will be made on the 15th day after entry of an order approving fees.

   b. *United States Trustee Fees*.  This case is a Sub Chapter V Chapter 11 case.  As such, no U.S. Trustee fees are required to be paid under 28 U.S.C. §1930(a)(6).

   c. *Sub Chapter V Trustee Fees*.  All fees required to be paid to the appointed Sub Chapter V Trustee pursuant to Court order shall be paid in full on the Effective Date in cash.  For fees approved after the Effective Date and before entry of a final decree, payment will be made on the 15th day after entry of an Order approving fees.

2.03   <u>Priority Tax Claims</u>.  Each holder a priority tax claim will be paid in full in equal monthly payments commencing on or before the Effective Date and paid in full on or before the 5th anniversary of the Petition Date, plus interest at a rate of 3%.  At the Debtor's election, priority tax claims can be pre-paid at any time without penalty.  At this time, the Debtor doesn't believe there are any priority tax claims.

## ARTICLE III
*Treatment of Claims and Interests Under the Plan*

Claims and interests shall be treated as follows under this Plan:

**3.01    Class 1 – JP Morgan Chase secured claim**

JP Morgan Chase Bank ("Chase") holds a secured claim in the amount of $26,118.39 fully secured by one of Debtor's vehicles, 2017 Land Rover. Pursuant to the terms of the existing contract, the Debtor shall pay $740 per month in installment payments until the claim is paid in full. Chase shall retain its lien on the Land Rover until it is paid in full. Upon timely payment of the balance in full, Chase shall release the lien to the title of 2017 Land Rover and provide the Debtor with original title free of liens and encumbrances.

**3.02    Class 2 - Allowed Unsecured Claims**

Holders of allowed unsecured claims shall receive a pro rata share of the Unsecured Creditor Payments on an annual basis for a period of 5 years beginning on the 1st anniversary of the Effective Date of the Plan, and continuing yearly for another 4 years. The Unsecured Creditor Payments shall equal $25,000 in the aggregate, and each yearly payment shall be $5,000 for five (5) payments. Based upon the unsecured claims, the estimated distribution to unsecured creditors is 6.52%

No distribution will be made for unsecured claims which were either (i) scheduled as disputed; or (ii) no timely proof of claim was filed.

**3.03    Class 3 – Insider Claims**

Insider Claims, if any, will not be paid under the Plan unless or until Classes 1 and 2 are paid in full. The Debtor does not believe there are any outstanding insider claims.

**3.04    Class 4 – Equity Security Holders**

Equity security holders shall retain their interests in the Debtor. In addition, the principal of the Debtor will be entitled to a salary for his work on behalf of the Debtor. *See* Section 7.08 below.

## ARTICLE IV
*History of the Debtor, Description of Assets (Liquidation Analysis) and Projected Income*

4.01    <u>History of the Debtor</u>

The Debtor is a Sub Chapter 5 small business debtor as defined in 11 U.S.C. §101(51D) and is a construction company operating out of West Chicago, Illinois. The company was started in 2009 as a one-man construction crew by its owner, Andrzej Kurza. Over the years, the company

concentrated on exterior and siding repairs by hiring additional subcontracts and taking on larger projects. The Debtor operated profitably until COVID-19 pandemic started in 2020. The Debtor's business declined during that time due to imposed restrictions and consumer's and business's hesitancy to engage in new construction projects. In addition, due to financial difficulties of Debtor's customers, Debtor did not receive full payments or no payments at all on a number of projects.

The Debtor intends to continue to operate by cutting additional expenses and being more exclusive with upcoming projects based on their profitability and customer's ability to pay. The Debtor has an excellent reputation within construction industry and with upcoming increase in construction projects, Debtor expects to return to profitability whereas the principal's recovery and ability to manage past debts through a Plan of Reorganization, the Debtor feels confident that the business will operate profitably going forward.

4.02    Assets of the Debtor/Liquidation Analysis

As of the Petition Date, the Debtor had a $9,624 balance in its bank accounts. The Debtor also had 2017 Land Rover, valued at $34,000 with a loan balance of $26,118.39, a 2004 Dodge 3500 pickup truck valued at $1,000 and a dump trailer valued at $900. Debtor has no other assets. The Debtor works with subcontractors. The Debtor obtains contracts from customers or other construction companies and contracts with subcontractors to perform actual work. The Debtor's net income is the difference between the gross income from the contracts and the cost of the 1099 subcontractors (plus other miscellaneous expenses as set forth on the projections).

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. The Debtor's assets as of the Petition Date were $19,405.61. Therefore, if the Debtor were to be liquidated, creditors would receive an approximate distribution of 5.0% on their claims. The funds paid to creditors under the Plan exceeds the 5.0% distribution they would receive upon liquidation. As a result, creditors will derive the most benefit from allowing the Debtor to restructure and generate income to satisfy the payments under the Plan.

A liquidation analysis is attached hereto as Exhibit B.

4.03    Projected Income

The Debtor must show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business.

A copy of the Debtor's 5-year projections is attached hereto as Exhibit C. The Debtor's financial projections show that the Debtor will have cumulative projected disposable income (as defined by Section 1191(d) of the Bankruptcy Code for the period described in Section 1191(c)(2) sufficient to pay the required payments under the Plan.

The Plan is a 5 year plan. The final Plan payment will be in approximately 2027.

4.04   Operations During Chapter 11 Proceeding

Attached as Exhibit D is a summary of the Debtor's operating reports filed in the Chapter 11 proceeding.

### ARTICLE V
#### *Allowance and Disallowance of Claims and Estimation of Claims And Litigation Claims*

5.01   Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and as to which either (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (b) no proof of claim has been filed and the Debtor has scheduled the claim as disputed, contingent or unliquidated.

5.02   Delay of Distribution on a Disputed Claim.  No distribution shall be made on account of a disputed portion of a claim unless or until the disputed portion of the claim is allowed by a final non-appealable order.  The Debtor will make distributions on the non-disputed portion of a claim, when such payments are due.

5.03   Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Bankruptcy Rule 9019.  After confirmation of the Plan, the Reorganized Debtor may settle, compromise or otherwise resolve an objection to claim without approval of the Bankruptcy Court.

5.04   Estimation of Claims. The Debtor may, at any time, request that the Bankruptcy Court estimate any disputed claim pursuant to §502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtor has previously objected to the claim.  In the event that the Bankruptcy Court estimates a disputed claim, the estimated amount may constitute either the amount of the allowed claim or a maximum limitation of the claim.

5.05   Prepayment of Claims. The Reorganized Debtor reserves the right to offer prepayment of claims to creditors before the expiration of the Plan without penalty or premium.  Acceptance of prepayment by creditors shall be purely voluntary.  The prepayment shall be conditioned upon no affect or impairment of the Reorganized Debtor's ability to satisfy its obligations under the Plan.

5.06   Lapsed and Unclaimed Distributions.

(a)   Any distribution that has not been cleared within ninety (90) days of the date of the distribution will lapse.  Lapsed distributions will revert to the Debtor.

(b)   If any distribution is returned as undeliverable, no further distributions to such creditor will be made unless the Debtor is notified in writing of the creditor's current address. Upon receipt of the notification, the Debtor will remit all missed distributions to the creditor without interest. All claims for undeliverable distributions must be made on or before the first anniversary of the Effective Date of the Plan. If any claims are not made within that time, all unclaimed distributions will revert to the Debtor. Nothing in the Plan will require the Debtor to attempt to locate any holder of an allowed claim.

5.07   <u>Litigation Claims</u>

The Debtor does not have any litigation claims.

## ARTICLE VI
### *Provisions for Executory Contracts and Unexpired Leases*

6.01   <u>Rejected Executory Contracts and Unexpired Leases</u>. The Debtor will be conclusively deemed to have rejected all executory contracts or unexpired leases not expressly assumed under this Article 6 as of the Effective Date. The Debtor has no executory contracts to assume.

## ARTICLE VII
### *General Provisions*

7.01   <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. These definitions are supplemented by the following:

(a)   The Effective Date ("<u>Effective Date</u>") of the Plan will be the 30th day after the Order confirming the Plan is a final order.

(b)   The "Reorganized Debtor" shall refer to the Debtor as an entity created upon the entry of an order confirming the Plan.

7.02   <u>Conditions to Effective Date</u>. The following conditions precedent may affect the occurrence of the Effective Date: (1) failure to obtain confirmation; (2) modification of the Plan, which requires approval of the court; (3) the Order of Confirmation is vacated, amended, modified or stayed; or (4) the Order of Confirmation is the subject of any appeal, reconsideration or other review.

7.03   <u>Contested Plan Confirmation</u>. If the Debtor does not receive sufficient votes to confirm the Plan, pursuant to Section 1191(b), the Debtor shall seek to confirm the Plan as it does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and have not accepted the Plan. In the event of a contested confirmation, the Debtor shall remain as the Disbursing Agent for all Plan payments.

      7.04    <u>Remedies Upon Default</u>. In the event that the Debtor fails to make its Plan payments when due, creditors may seek relief from the Plan injunction to enforce the terms of the Plan or, if the case has been closed, may enforce the terms of the Plan without further relief from the Bankruptcy Court.

      7.05    <u>Severability</u>.  If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

      7.06    <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of the entity.

      7.07    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

      7.08    <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

      7.09    <u>Corporate Governance</u>.  Debtor proposes to issue one class of shares in the Reorganized Debtor – 100% owned by Andrzej Kurza. Therefore, pursuant to §1123(a)(6) of the Bankruptcy Code, the Debtor will not issue nonvoting equity securities. Each class of securities will have the power to vote in the governance of the Debtor.  No class of securities will have preference over another class with respect to dividends.

      7.10    <u>Disbursing Agent</u>.  Andrzej Kurza will be the disbursing agent for the Debtor for the purpose of distributions and payments to be made pursuant to the Plan.  Mr. Kurza will continue in his role as President of the Debtor and will be entitled to receive a salary from the Debtor in the amount listed on the Projections attached to this Plan as Exhibit C.

      7.11    <u>Notice</u>:  Any Notice of Default shall be sent to the Debtor's counsel by e-mail to [David.freydin@freydinlaw.com](mailto:David.freydin@freydinlaw.com) and to the Debtor at NWR Construction & Exteriors, Inc., and shall be effective when sent.  Debtor may notify creditors, in writing, of any change of address for either the Debtor or counsel.

## ARTICLE VIII
*Discharge, Return of Property and Vesting of Assets*

      8.01    <u>Discharge</u>. On the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Bankruptcy Code.  However, the Debtor shall not

be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule4007(c), or (iii) of a kind specified in §1141(d)(6)(B). After the Effective Date of the Plan, your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

8.02   Vesting of Assets.  On the Effective Date of the Plan, Debtor's right, title and interest in and to its assets shall vest with the Reorganized Debtor.

# ARTICLE IX
*Retention of Jurisdiction*

The Bankruptcy Court shall retain jurisdiction over this Chapter 11 Case for the following purposes:

10.01   Resolution of any and all objections to claims and requests to estimate claims.

10.02   Determination of all questions and disputes regarding all causes of action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Effective Date between (a) the Reorganized Debtor and any other party or (b) otherwise under the Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with this Chapter 11 Case.

10.03   The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

10.04 Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

10.05   Allowance of all claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Reorganized Debtor or its estate pursuant to the provisions of the Bankruptcy Code, and resolution of all disputes pertaining thereto.

10.06   Entry of a Final Order confirming substantial consummation of the Plan and closing the Chapter 11 Case.

[Remainder of Page Intentionally Left Blank]

4874-2936-0405, v. 1

Dated this 2nd day of January 2024,

Respectfully Submitted:

NWR CONSTRUCTION & EXTERIORS, INC.

By: _____
Andrzej Kurza
Its President

By: ___ /s/ David Freydin_____

David Freydin
One of its Attorneys

David Freydin (ARDC#6286192)
Law Offices of David Freydin, PC
8707 Skokie Blvd. Suite 312
Skokie, IL 60076
(847) 972-6157
David.freydin@freydinlaw.com